# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                        )
DAVID ARRINGTON,                        )
                                        )
            Plaintiff,                  )
                                        )        Civil Action No. 07-0170 (RBW)
       v.                               )
                                        )
DISTRICT OF COLUMBIA, <u>et al.</u>,    )
                                        )
            Defendants.                 )
                                        )
_____)

## <u>MEMORANDUM OPINION</u>

The plaintiff, David Arrington, brings this action against the defendants, the District of

Columbia and Detective Milton Norris of the District of Columbia Metropolitan Police

Department, alleging that the defendants violated his civil rights guaranteed by 42 U.S.C. § 1983

(2000) ("§ 1983"), and his constitutional rights guaranteed under the Fourth, Fifth, and

Fourteenth Amendments of the United States Constitution.  The plaintiff also seeks a liability

finding against the defendants for the alleged commission of several common law torts.[1]

Currently before the Court is the defendants' motion for summary judgment, the plaintiff's

opposition, and the defendants' reply to the plaintiff's opposition.[2]

---

[1] The plaintiff alleges that this Court has pendent jurisdiction over his five common law
tort claims, which are claims for assault, battery, intentional infliction of emotional distress,
conversion, and false imprisonment.  Plaintiff's Amended Complaint ("Am. Compl.") at 1-2.

[2] In rendering this opinion, the Court also considered the following documents filed by
the parties: (1) Plaintiff's Amended Complaint ("Am. Compl."); (2) Memorandum of Points and
Authorities in Support of Defendants' Motion for Summary Judgment ("Defs.' Mem."); (3)
Plaintiff's Response to Defendants' Motion for Summary Judgment, including the plaintiff's

(continued...)

In support of their motion for summary judgment, the defendants advance three grounds upon which they contend the Court should rule in their favor on the plaintiff's civil rights violation claims: (1) the plaintiff cannot prove that a § 1983 violation was committed; (2) the plaintiff cannot establish claims under either the Fifth or the Fourteenth Amendment; and (3) defendant Norris is entitled to qualified immunity as to the Fourth Amendment claim filed against him, which precludes liability findings being issued against both him and the District of Columbia.[3]  Defs.' Mem. at 9, 12, 15-17.  In response, the plaintiff argues only that his Fourth Amendment claim survives summary judgment.  Pl.'s Opp'n at 8.

Having failed to respond to the defendants' challenges to his § 1983, and the Fifth and Fourteenth Amendment claims, the plaintiff has conceded the challenges to those claims, preserving only his claim under the Fourth Amendment.[4]  Pl.'s Opp'n at 8.  Further, as set forth below, this Court finds that defendant Norris is entitled to qualified immunity as to most of the Fourth Amendment theories of liability lodged against him.  Accordingly, the Court must grant summary judgment for the defendants on the plaintiff's § 1983 claim and all of his constitutional

---

[2](...continued)
Memorandum of Points and Authorities in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment ("Pl.'s Opp'n") and Plaintiff's Statement of Genuine Issues ("Pl.'s Gen. Issues"); and (4) the defendants' Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Defs.' Reply").

[3] The defendants also challenge the survivability of the plaintiff's common law tort claims in their motion for summary judgment, but the Court has chosen not to address the arguments pertaining to those claims for the reasons set forth in this Memorandum Opinion.

[4] Even if the plaintiff's Fifth and Fourteenth Amendment claims had not been conceded based on the plaintiff's failure to address the challenges to those claims, the Court would have nonetheless had to dismiss those claims based on the defendant Norris' qualified immunity as set forth in this opinion.

claims, except for two theories of Fourth Amendment liability which the defendants did not

address in their summary judgment motion.  Specifically, for the reasons explained below, the

Court finds that on the record currently before it that it cannot address whether the components

of the plaintiff's Fourth Amendment claim based on the seizure of his property and his

handcuffing after he was shot can survive summary judgment.  And, because the plaintiff's

common law tort claims are only properly before this Court based on pendent jurisdiction, the

Court will dismiss without prejudice the defendants' motion as related to these claims until it has

the opportunity to resolve the plaintiff's remaining theories of the defendants' Fourth

Amendment liability.

## I.  BACKGROUND

On the evening of August 25, 2006, the plaintiff, a resident of the District of Columbia,

exited a house located at 2233 Prout Street, S.E. in Washington, D.C., into a poorly lit alleyway.

Pl.'s Opp'n at 1; Defs.' Mem., Exhibit ("Ex.") 3 (Jun. 30, 2008 Deposition of David Arrington

("Arrington Dep.")) at 32.[5]  As the plaintiff walked down the alley, he observed a police cruiser

driving on Nicholson Street and then saw an African-American male holding a gun run into the

alley in his direction, followed closely by another man.  Defs.' Mem., Ex. 4 (Aug. 26, 2006

Interview of David Arrington ("Arrington Int.")) at 5-6.  The man with gun was later identified as

---

[5] In resolving the defendants' summary judgment motion, the Court has primarily considered a statement the plaintiff made to Sergeant Nicholas Bruel during the early morning hours of August 26, 2006, while he was in the emergency room at The George Washington University Hospital.  However, where there is any contradiction between the plaintiff's subsequent deposition testimony and his statement to Sergeant Bruel, the statement to Sergeant Bruel will be considered the correct version of what the plaintiff contends occurred on the night of the shooting because the plaintiff testified during his deposition that his initial statement is more accurate than what he said during his deposition.  See Pl.'s Opp'n at 5.

Dwayne Shorter, Pl.'s Opp'n at 2, and the man chasing Mr. Shorter was defendant Norris, a plain-clothes police detective, who had begun to chase Mr. Shorter after defendant Norris heard gun shots and saw Mr. Shorter carrying a gun.  Id.

The plaintiff witnessed Mr. Shorter drop his weapon, Defs.' Mem., Ex. 4 (Arrington Int.) at 5-8, and heard defendant Norris say "freeze," and the plaintiff started running in the opposite direction of both defendant Norris and Mr. Shorter, Id.; Pl.'s Opp'n at 2-4.  While running, the plaintiff's "leg got numb" and he fell to the ground, which he later learned was the result of being shot by defendant Norris.[6]  Defs.' Mem., Ex. 4 (Arrington Int.) at 5; Pl.'s Opp'n at 1.  While the plaintiff was still on the ground, defendant Norris approached him and asked if the gun that the suspect dropped belonged to the plaintiff, Defs.' Mem., Ex. 4 (Arrington Int.) at 5; Pl.'s Opp'n at 3, to which the plaintiff responded in the negative, Defs.' Mem., Ex. 4 (Arrington Int.) at 5.

After other officers from the Metropolitan Police Department arrived on the scene, the plaintiff was taken to The George Washington University Hospital for treatment.  Defs.' Mot., Ex. 3 (Arrington Dep.) at 52.  While being transported to the hospital, the plaintiff was placed in

---

[6] The plaintiff alleges that defendant Norris shot him "intentionally," Pl.'s Opp'n at 1, but the defendants contend that the shooting was "accidental," Defs.' Mot. at 15.  The only evidence that the plaintiff puts forth to establish defendant Norris' intention, is his testimony that Norris saw him in the alley before he fired his weapon.  See Defs.' Mem., Ex. 4 (Arrington Int.) at 7-8 ("When I heard freeze I looked at the police officer, the police officer saw me.") & 15 ("I don't know [whether I was shot by accident] because [the police officer] seen two black males in the alley and he see[n] a weapon on the ground.").  On the other hand, defendant Norris contends that he did not see the plaintiff before firing his weapon at Mr. Shorter.  Defs.' Mem., Ex. 1 (July 1, 2008 deposition of Milton Norris ("Norris Dep.")) at 59 ("Well, when I looked down the alley at [Mr. Shorter] I didn't see anybody else.").  The Court finds this contradiction immaterial, because even when considering the evidence in the light most favorable to the plaintiff, summary judgment is still appropriate regardless of whether the shooting was intentional or accidental; in other words, this factual dispute does not affect the outcome of the merits of the defendants' motion.

handcuffs, but neither the plaintiff nor the defendants contend that defendant Norris handcuffed the plaintiff.  Pl.'s Opp'n at 6; Defs.' Reply at 6.  As a result of the incident, the Metropolitan Police Department seized the plaintiff's property as evidence, including his watch, cellular telephone, car keys, five dollars, clothing and tennis shoes.[7]  Pl.'s Opp'n at 6-7.  The property has not been returned to the plaintiff.  Pl.'s Opp'n at 7; Defs.' Reply, Ex. B (July 1, 2008 Deposition of Dan Lewis ("Lewis Dep.")) at 7-9.

## II.  SUBJECT MATTER JURISDICTION

Because jurisdiction is a threshold issue that a federal court must address, the Court must first analyze the question of its jurisdiction when raised by a party or assess sua sponte its jurisdiction at any point during the litigation even in the absence of a challenge before considering the merits of a plaintiff's lawsuit.  Fed. R. Civ. P. 12(h)(3).  Here the Court has federal question jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) over the plaintiff's Fourth Amendment constitutional claims.[8]  And, the Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over the plaintiff's common law tort claims to the extent that it has federal question or diversity jurisdiction over other related claims that arise from a "common nucleus of operative fact."  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).  The Court will therefore consider in part the merits of the defendants' challenges to the plaintiff's Fourth Amendment claim.

---

[7] The defendants contend that they did not seize the five dollars and are not in possession of any money belonging to the plaintiff.  Defs.' Reply, Ex. B (July 1, 2008 Deposition of Dan Lewis ("Lewis Dep.")) at 10.

[8] Although the plaintiff asserts generally in the jurisdictional provision of his complaint statutory claims arising under 42 U.S.C. §§ 1981 through 1988, Am. Compl. ¶ 2, he only asserts, with specificity, a statutory claim arising under § 1983, Am. Compl. ¶¶ 1, 10-34.

### III. SUMMARY JUDGMENT ANALYSIS

**A. Summary Judgment Standard of Review**

Summary judgment is appropriate under Rule 56(c) where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2008). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment may be entered after there has been an "adequate time for discovery . . . [and the] party [against whom the motion has been filed] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Summary judgment is, however, "a drastic remedy, [and therefore] courts should grant it with caution so that no person will be deprived of his or her day in court to prove a disputed material factual issue." Greenberg v. Food & Drug Admin., 803 F.2d 1213, 1216 (D.C. Cir. 1986). Thus, the Court must draw "all inferences . . . in favor of the non-moving party." Coward v. ADT Sec. Sys., Inc., 194 F.3d 155, 158 (D.C. Cir. 1999). However, the party opposing the motion for summary judgment "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248 (internal quotations and citations omitted). Additionally, the mere existence of a factual dispute will not bar summary judgment. Instead, the party opposing the motion must show that it is a genuine issue of material fact. See Anderson, 477 U.S. at 247-48. And, to be considered a genuine issue of material fact, the fact must be one that is supported by

admissible evidence sufficient for a reasonable trier of fact to find in favor of the nonmoving

party and is therefore capable of affecting the outcome of the litigation.  Id.; see also Laningham

v. U.S. Navy, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

## B.  Summary Judgment Analysis

In the defendants' motion for summary judgment, they argue that (1) the plaintiff cannot

prove that a § 1983 violation occurred because there is no evidence of a flawed governmental

custom or policy, Defs.' Mem. at 9-10; (2) the plaintiff cannot state a claim under the Fourteenth

or Fifth Amendments because the Fourteenth Amendment does not apply to the District of

Columbia and the claims brought under the Fifth Amendment are better analyzed under the

Fourth Amendment, id. at 12-13; and (3) defendant Norris did not intentionally shoot the plaintiff

and is entitled to qualified immunity as to the Fourth Amendment claim filed against him, id. at

13, 15-17.[9]

As noted earlier, the plaintiff's opposition to the defendants' motion does not address the

defendants' challenges to his Fifth Amendment, Fourteenth Amendment, or § 1983 claims.  Pl.'s

Opp'n at 8.  The plaintiff does, however, respond to the defendants' challenge to his Fourth

Amendment claim, stating that (1) there are genuine issues of material fact, id. at 8; see Pl.'s

_____

[9] The defendants also argue that the plaintiff's common law tort claims fail because the
plaintiff has not established the requisite intent necessary to establish these intentional tort
claims, defendant Norris did not handcuff the plaintiff, the plaintiff's property has not been
converted because it is available for him to re-acquire, and because all of the plaintiff's federal
question claims should be dismissed, his common law claims should be accordingly dismissed as
well for lack of jurisdiction.  Defs.' Mem. at 16-21, 23.  However, the Court does not construe
the defendants' references to the seizure of the property and the handcuffing as properly raised
challenges to their sustainability as Fourth Amendment claims because the defendants only
reference those acts as they relate to the plaintiff's common law claims.  Accordingly, resolution
of these questions will have to be left to another day.

Gen. Issues;[10] (2) that defendant Norris's act of shooting him was an unlawful seizure, Pl.'s

Opp'n at 9; and (3) that defendant Norris's shooting was unreasonable and, therefore, not

protected by qualified immunity, id. at 10.  The plaintiff also argues that the defendants violated

his Fourth Amendment rights when he was handcuffed and his property was seized, even though

he does not allege that defendant Norris actually handcuffed him or seized his property, id. at 10

n.2; Am. Compl. ¶¶ 15-18.

In the defendants' reply to the plaintiff's opposition, they assert that the plaintiff has

failed to state a claim under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), and note that

he has failed to contest the defendants' arguments regarding his claims under § 1983, and the

Fifth and Fourteenth Amendment, and, therefore, the plaintiff has conceded their challenges to

these claims, Defs.' Reply at 3.  And regarding his Fourth Amendment claim, the defendants

reply that the plaintiff's equivocal and speculative wavering position regarding whether

defendant Norris intentionally shot him fails to counter their argument that there was no intent.[11]

Id. at 4-5.  The defendants also note that the plaintiff does not contest the fact that defendant

---

[10] The plaintiff also asserts that there are genuine issues of material fact in dispute regarding his common law tort claims.  Pl.'s Opp'n at 11; see Pl.'s Gen. Issues. ¶¶ 1-9.

[11] The defendants contend that the plaintiff's otherwise unsupported opinion that defendant Norris intentionally shot him fails "to create a material factual dispute," or can be considered to have any factual value.  Defs.' Reply at 4.  In support of this assertion, the defendants' offers statements the plaintiff made to Sergeant Breul shortly after the shooting and during his deposition testimony, id., and the plea agreement of Dewayne Shorter, the suspect that defendant Norris was chasing when the shooting occurred, id. at 5.  In Shorter's statement, he acknowledges that on the night in question "[he drew] his weapon and dropped it on the ground, but "[a]s Detective Norris pursued [him], [he] then picked up his pistol and pointed it toward Detective Norris."  Id., Ex.A (Statement of Dewayne Shorter) ("Shorter Stmt."), at 4.  "Detective Norris, fearing for his safety, fired one round that missed [Shorter] and struck David Arrington."  Id.

Norris was not the officer who handcuffed him and has, therefore, conceded that component of

the Fourth Amendment claim against him in both his official and individual capacities.  Id. at 6.

"[I]f the [party opposing a motion for summary judgment] files a responsive

memorandum, but fails to address certain arguments made by the moving party, the court may

treat those arguments as conceded, even when the result is dismissal of the entire case."

Bancoult v. McNamara, 227 F. Supp. 2d 144, 149 (D.D.C. 2002) (internal citations omitted); see

Tafler v. District of Columbia, 539 F. Supp. 2d 385, 393 (D.D.C. 2008) (finding summary

judgment appropriate where the non-moving party violated Local Rule 7(b) in failing to address

an argument it in his opposition to the motion for summary judgment); Stephenson v. Cox, 223

F. Supp. 2d 119, 122 (D.D.C. 2002) ("The court's role is not to act as an advocate for the

plaintiff and construct legal arguments on his behalf in order to counter those in the motion to

dismiss.").  This principle comports with the view that it is "well understood in this Circuit that

when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments

raised by the defendant, [the Court] may treat those arguments that the plaintiff failed to address

as conceded."  Hopkins v. Women's Div., Gen. Bd. Of Global Ministries, 238 F. Supp. 2d 174,

178 (D.D.C. 2002) (citing FDIC v. Bender, 127 F.3d 58, 67-68 (D.C. Cir. 1997); additional

citation omitted); see also Day v. D.C. Dep't of Consumer & Regulatory Affairs, 191 F. Supp. 2d

154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in

a motion, the [Court] may treat that argument as conceded.").

As the defendants argue correctly, the plaintiff's response to their motion for summary

judgment fails to respond to the argument "that [the] [p]laintiff can muster no evidence, pursuant

to Monell v. Department of [Social Services], 436 U.S. 658, 691 (1978), to show that the District

of Columbia violated any constitutional right afforded [the] [p]laintiff." Defs.' Reply at 3.

Moreover, the defendants correctly note that the "[p]laintiff also has offered no argument in

opposition to [their] assertions that [he] cannot maintain a claim under either the Fifth or

Fourteenth Amendments." Id. The Court must therefore accept the defendants' argument that

they are entitled to summary judgment on these components of Count I of the amended

complaint. Id. Therefore, the only component of Count I remaining is the plaintiff's Fourth

Amendment claim against the defendants.

The plaintiff's Fourth Amendment claim is premised, inter alia, on the position that

defendant Norris deprived him of his Fourth Amendment right to be free from "unlawful search

or seizure" by shooting the plaintiff in the leg,[12] Pl.'s Opp'n at 9-10, and "claims of excessive

force are to be judged under the Fourth Amendment's 'objective reasonableness' standard."

Brosseau v. Haugen, 543 U.S. 194, 197 (2004) (citing Graham v. Connor, 490 U.S. 386, 388

(1989)). The defendants dispute that the plaintiff has a sustainable Fourth Amendment claim,

and argue also in the alternative that even if the plaintiff does have a claim under the Fourth

Amendment, defendant Norris is entitled to qualified immunity. Defs.' Mem. at 13, 15-17. In

response, the plaintiff contends that defendant Norris intentionally shot him, which was an

unreasonable act, and therefore, he is not shielded from liability based on qualified immunity.

Pl.'s Opp'n at 9-10. For the foregoing reasons, the Court agrees with the defendants' qualified

---

[12] At the outset, it is again noted that the defendants have not challenged what appears to be two of the plaintiff's theories in support of his position that his Fourth Amendment rights were violated, his handcuffing after he was shot and the seizure of his property. It is undisputed that defendant Norris was not responsible for handcuffing the plaintiff, Pl.'s Opp'n at 10 n.2, and there is no evidence in the record that he seized the plaintiff's property, but these claims could still be viable against the District of Columbia, and as such, the Court will reserve ruling on these components of the plaintiff's Fourth Amendment claim.

immunity position.[13]

In determining whether or not a government official is entitled to qualified immunity, the Court will apply the two-step analysis of <u>Saucier v. Katz</u>,[14] which requires that the Court determine (1) whether a constitutional right has been violated and (2) whether the right was clearly established.  533 U.S. 194, 194-95 (2001); <u>see also</u> <u>Brosseau</u>, 543 U.S. at 197 (citing <u>Saucier</u>, 533 U.S. at 201) ("When confronted with a claim of qualified immunity, [the Court] must ask first the following question: 'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'").

The issue of intent bears directly on the first step of the <u>Saucier</u> test because it determines whether a Fourth Amendment violation occurred.  <u>See</u> <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 844 (1998) (finding no Fourth Amendment violation where police execute an <u>unintended</u> seizure); <u>see also</u> <u>Bublitz v. Cottey</u>, 327 F.3d 485, 489 (7th Cir. 2003) (finding that a seizure occurs where there is "governmental termination of freedom . . . <u>through means intentionally applied</u>." (citation omitted)).  Therefore, if defendant Norris did not intend to shoot the plaintiff, no constitutional violation has occurred and Norris is consequently entitled to the protection

---

[13] It should be noted that qualified immunity applies to defendant Norris in both his official and his individual capacity, and the City is not liable for any actions of defendant Norris from which he is shielded from liability by qualified immunity.  <u>See</u> <u>Bd. of County Com'rs v. Umbehr</u>, 518 U.S. 668, 672 (1996) (finding that suit in the individual capacity can be barred by qualified immunity).  And, "[q]ualified immunity shields public officials from money damages," which is the sole form of damages the plaintiff seeks in this lawsuit.  <u>Morse v. Frederick</u>, __ U.S. __, 127 S. Ct. 2618, 2624, n.1 (2007).

[14] Although the United States Supreme Court has held that the two-step analysis that it articulated in <u>Saucier v. Katz</u> "should not be regarded as mandatory in all cases," <u>see</u> <u>Pearson v. Callahan</u>, __ S. Ct. __, 2009 WL 128768 at *9 (2009), the Court finds that employing <u>Saucier's</u> "procedure is worthwhile" here, <u>id.</u> at *13, and therefore it will be utilized.

afforded by qualified immunity.  See Saucier, 533 U.S. at 201.  The plaintiff offers conflicting

accounts as to whether defendant Norris saw him before firing his weapon, which is the only

evidence that the plaintiff offers that bears on the question of intent, apart form the plaintiff's

bare assertion that defendant Norris shot the plaintiff purposefully.[15]  On the other hand,

defendant Norris emphatically contends that he did not intend to shoot the plaintiff and did not

see him before firing his weapon at his intended target, Mr. Shorter.  Defs.' Mem., Ex.1 (Norris

Dep.) at 59, 68-69.  The plaintiff's Fourth Amendment claim cannot survive summary judgment

on mere unsupported allegations and legal conclusions.  Anderson, 477 U.S. at 248 (internal

quotations and citations omitted).  Specifically, the plaintiff's bare assertion that defendant Norris

saw him in the alley before firing his weapon, without more, cannot establish any intent on the

part of defendant Norris to shoot the plaintiff.  In the absence of a showing of intent, the Court

must conclude that the shooting was accidental as the defendants maintain, and therefore, it

cannot find that the plaintiff has established a viable constitutional violation.  See Berg v. County

of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000) ("For example, if a police officer fires his gun at

a fleeing robbery suspect and the bullet inadvertently strikes an innocent bystander, there has

been no Fourth Amendment seizure.  If, on the other hand, the officer fires his gun directly at the

---

[15] In the plaintiff's deposition, he replies "no" to the question, "Do you believe now that
you were shot on purpose?"  Def.'s Mem., Ex. 3 (Arrington Dep.) at 49-50.  He then attempted to
clarify this response by referring back to his initial interview with Sergeant Bruel, which he states
would probably be more accurate due to its temporal proximity to the event.  However, this
earlier statement offers no clarity on the issue.  Id. at 63-64.  In the plaintiff's statement to
Sergeant Bruel, he states that he "thought [defendant Norris] was shooting at the person who had
the gun" up until the point he felt the bullet hit him.  Defs.' Mem., Ex. 4 (Arrington Int.) at 5.  He
also stated that after the shooting, defendant Norris approached the plaintiff and asked if the gun
belonged to him.  Id. at 5.  In this same statement, the plaintiff indicated that he believes that he
was shot by the officer "because the suspect was moving in a different direction," but then stated
"he thinks he was shot on purpose."  Id. at 15.

innocent bystander in the mistaken belief that the bystander is the robber, then a Fourth

Amendment seizure has occurred." (internal citations omitted)); see also Dodd v. City of

Norwich, 827 F.2d 1, 8 (2nd Cir. 1987), on reh'g, ("The Supreme Court has not yet extended

liability under the fourth amendment to include negligence claims. . . . Negligence, in fact, has

been explicitly rejected as a basis for liability under the fourteenth amendment." (citing Daniels

v. Williams, 474 U.S. 327, 336 (1986); Davidson v. Cannon, 474 U.S. 344, 347-48 (1986)); Cf.

Porter v. Jameson, 889 F. Supp. 1484, 1492 (M.D. Ala. 1995) (finding that qualified immunity

applies and the plaintiff failed to cite any case law binding on the court "which establishes that a

police officer, while acting within the scope of his or her duty, violates a bystander's substantive

due process rights when such bystander is injured accidentally when the officer is in pursuit of a

fleeing suspect."); Oledzka v. City of Chicago, No. 88 C 8695, 1989 WL 39500 at *5 (N.D. Ill.

Mar. 16, 1989) ("Accidental injuries occurring during arrests have been repeatedly held not to

give rise to constitutional violations.").

      However, even if the plaintiff had established that a question of fact existed as to whether

defendant Norris saw him in the alley, this result would have no impact on the final assessment

of whether the plaintiff's Fourth Amendment claim survives the defendants' summary judgment

motion because the Court finds that the defendants prevail on defendant Norris' qualified

immunity defense. See Pearson v. Callahan, __ S. Ct. __, __, 2009 WL 128768 at *6 (2009)

("The protection of qualified immunity applies regardless of whether the government official's

error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and

fact.'" (citation omitted)).

      The second prong for assessing a claim of qualified immunity under Saucier requires a

plaintiff to show that there was a violation of a clearly established constitutional right.  While it is a longstanding right of the people to be free from unreasonable force at the hands of police officers, <u>Terry v. Ohio</u>, 392 U.S. 1, 9 (1968) ("'No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.'"(citation omitted)); <u>see also</u> <u>Saucier</u>, 533 U.S. at 194-95, the question of whether it would be clear to a reasonable officer that defendant Norris' conduct here was unlawful in the situation he was confronting is a more complicated question.  In assessing claims of deadly force, the Supreme Court explained in <u>Tennessee v. Garner</u>, that it is unreasonable for an officer to "seize an unarmed, nondangerous suspect by shooting him dead [,] . . . [but] [w]here the officer has probable cause to believe that a suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force."  471 U.S. 1, 11 (1985).  Thus, to ensure that police officers and public officials are able to perform their duties properly, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982) (citing <u>Procunier v. Navarette</u>, 434 U.S. 555, 565 (1978); <u>Wood v. Strickland</u>, 420 U.S. 308, 322 (1975)).

Here, the Court concludes that there is sufficient evidence in the record to indicate that defendant Norris acted as any reasonable officer would have when faced with the same situation and therefore his actions are shielded by qualified immunity.  Even if an officer's belief that there

14

was a need to utilize force was a mistaken one, the officer's qualified immunity defense prevails

"if a reasonable officer possessing the same information could have believed that his conduct

was lawful." Reed v. District of Columbia, 474 F. Supp. 2d 163, 173 (D.D.C. 2007) (citing

District of Columbia v. Evans, 644 A.2d 1008, 1016 (D.C. 1994)).  The reasonableness of an

officer's actions is to be assessed "from the perspective of a reasonable officer on the scene,"

rather than through the lens of hindsight.  Kotsch v. District of Columbia, 924 A.2d 1040, 1047

(D.C. 2007) (quoting Etheridge v. District of Columbia, 635 A.2d 908 (D.C. 1993)); Young v.

Scales, 873 A.2d 337, 344 (D.C. 2005).  Norris' decision to use force under the circumstances is

shielded by his qualified immunity defense because the Court finds that based on the facts as

outlined below, a reasonable officer confronting the same circumstances could have reasonably

believed that the use of force, including deadly force, was necessary.  Reed, 474 F. Supp. 2d at

173.

      The Court's reasonableness determination results from its conclusion that Norris had

sufficient grounds to believe that his life was in imminent danger at the hands of an unidentified

gunman.[16]  Def.'s Reply at 4-5 & Ex. A (Shorter Stmt.) at 4.  In pursuing that suspect, Norris

---

[16] The plaintiff's contention that Norris was "fully aware" that the suspect had already
exited the alleyway and that Norris had no reason to believe that the plaintiff posed any threat
relies solely upon precisely the kind of second-guessing and hindsight that is impermissible,
Kotsch, 924 A.2d at 1047; Young, 873 A.2d at 344, and does not create a genuine issue of
material fact because it amounts to nothing more than the plaintiff's opinion about Norris' state
of mind.  The plaintiff's subjective and retrospective analysis of what Norris was aware of at the
time of the shooting is inadequate to convince a reasonable juror that no reasonable officer
possessing the same information that Norris possessed at that time could have believed that
shooting in the direction of Shorter was an unlawful act.  Pl.'s Opp'n at 4; Reed, 474 F. Supp. 2d
at 173.  Norris' negative response to the ambiguous question: "at the time Mr. Arrington, after he
was immediately shot, did you suspect him of anything at that time?," Pl.'s Opp'n at 2, does not
support the plaintiff's argument because the question refers to a period of time after the shooting.
The relevant inquiry is what information was available to Norris leading up to and at the time of

(continued...)

entered a poorly lit alley in which he found himself alone with the suspect and, crediting the

plaintiff's version, Norris then saw a second unknown individual, the plaintiff, in the alley

towards whom the suspect was running.  Def.'s Mem., Ex. 3 (Arrington Dep.) at 32, 36; Ex. 4

(Arrington Int.) at 5; Pl.'s Opp'n at 1-2.  With the suspect positioned in front of the plaintiff,

Def.'s Mem., Ex. 4 (Arrington Int.) at 6, Norris witnessed the suspect drop his weapon, reacquire

it, and aim it in his direction, which Norris could presume posed a threat to his life.  Def.'s Reply

at 4-5 & Ex. A (Shorter Stmt.) at 4.  In response to the threat, Norris exercised his authority to

order both parties to "freeze."   Pl.'s Opp'n at 1-4.  Facing the barrel of a suspect's weapon and,

according to the plaintiff's version of the facts, recognizing that there were two unidentified

individuals in the dark alley and believing that at least one of them was threatening his life,

defendant Norris fired his service weapon in the direction of the threat.  Pl.'s Opp'n at 3-5;

Def.'s Reply at 4-5 & Ex. A (Shorter Stmt.).  And there being no evidence in the record other

than that Norris fired one round from his weapon, the only reasonable conclusion to draw is that

he intended to fire at the individual with the gun in self-defense, but accidentally shot the

plaintiff.  Accordingly, the Court finds that Norris' action was "objectively reasonable," and

therefore he is shielded from liability by the defense of qualified immunity, Milstead v. Kibler,

243 F.3d 157, 165 (4th Cir. 2001), which also is a bar to a finding of liability being rendered

against the District of Columbia, Cf. Monell, 436 U.S. at 691 ("Congress did not intend

municipalities to be held liable unless action pursuant to official municipal policy of some nature

caused a constitutional tort. . . .  [A] municipality cannot be held liable solely because it employs

---

[16](...continued)
the shooting.  See Reed, 474 F. Supp. 2d at 173 (considering only the information available to the
police officer at the time of the shooting in evaluating the officer's qualified immunity defense).

a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a

respondeat superior theory.").

## C.  The Common Law Claims

The plaintiff's common law tort claims are only properly before this Court pursuant to the

doctrine of pendent jurisdiction, and because the Court has not yet addressed whether the

plaintiff's Fourth Amendment claim based upon the theories that the seizure of his property (as to

both defendants) and his handcuffing (as to the District of Columbia) can be maintained, the

Court must reserve a ruling on whether the common law claims should be adjudicated here or in

the Superior Court of the District of Columbia.  See Carnegie-Mellon Univ. v. Cohill, 484 U.S.

343, 350 (1988) ("Under [United Mine Workers of Am. v. Gibbs, 383 U.S. 715 (1966)], a federal

court should consider and weigh in each case, and at every stage of the litigation, the values of

judicial economy, convenience, fairness, and comity in order to decide whether to exercise

jurisdiction over a case brought in that court involving pendent state-law claims.  When the

balance of these factors indicates that a case properly belongs in state court, as when the

federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims

remain, the federal court should decline the exercise of jurisdiction by dismissing the case

without prejudice.").  The Court will therefore deny without prejudice the defendants' request

that the common law claims also be dismissed at this time.

## IV.  CONCLUSION

For the foregoing reasons, the Court must grant summary judgment to the defendants on

the plaintiff's federal claims brought under § 1983, and the Fifth and Fourteenth Amendments to

the United States Constitution.  The Court must also partially grant summary judgment to the

defendants on the plaintiff's Fourth Amendment claim, but declines to determine whether

summary judgment is proper under the Fourth Amendment as to the plaintiff's Fourth

Amendment claims based on the seizure of his property and his handcuffing (as to the District of

Columbia), having concluded that the challenges to these components of his Fourth Amendment

claims have not been properly raised.  Accordingly, the Court declines at this juncture to

determine whether the plaintiff's common law claims are properly before this Court and will

therefore deny without prejudice the defendants' request to dismiss these claims.[17]

_____/s/_____
REGGIE B. WALTON
United States District Judge

---

[17] An Order consistent with the Court's ruling accompanies this Memorandum Opinion.